**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 1:24-CR-001 (TSC)** |
| | : | |
| **CHRISTOPHER KENILEY,** | : | |
| Defendant. | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Keniley to 14 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.      **Introduction**

Defendant Christopher Keniley, a 63-year-old accountant, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

Keniley pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). The government's recommendation is supported by the defendant's (1) entry into the Capitol despite seeing clear signs that entry was prohibited, including rioters climbing through windows and a blaring alarm, (2) refusal to leave the Capitol even after walking past multiple police officers while inside, and (3) lack of any remorse shown for his conduct.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. The facts and circumstances of Keniley's crime support a sentence of 14 days of incarceration in this case.

## II.     Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, Doc. 19.

### Defendant Keniley's Role in the January 6, 2021 Attack on the Capitol

The defendant, Christopher Keniley, lives in Greenfield, Massachusetts. On January 6, 2021, Keniley was in Washington, D.C., where he joined the crowd outside the United States Capitol building. While on the west side of the U.S. Capitol, Keniley carried an American flag as

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

he stood immediately on the exterior of the Capitol building with a large group of rioters. *See Image 1.*



*Image 1: Keniley on the west side of the Capitol.*

At approximately 3:03 p.m., Keniley approached a line of police officers stationed outside the Capitol Building. While Keniley held the American flag in one hand, he held up his mobile phone with his other hand, using it to record or photograph the scene. *See Image 2.*



*Image 2: Keniley, standing on a retaining wall, uses his cellphone to film police officers in riot gear.*

While standing on a retaining wall in front of the officers and holding up his phone, Keniley exclaimed, "Yeah the criminals are inside, go get them. Did anyone ask how Pelosi [could be] a $200 millionaire? She's fucking corrupt, wake up! Jesus! What does it take?"

Keniley then stepped down from the wall, turned to someone in the crowd and said to them, "We gotta get in there man, they aren't going to listen to us," and pointed to the Capitol building. He then loudly exclaimed, "We gotta get in!" and then walked away in the direction of the Capitol building.

Keniley entered the Capitol through the Senate Wing Door at 3:09 p.m. with a large group of rioters. He continued to hold the American flag in one hand and continued to use his phone to record or photograph the scene. As he entered, an alarm blared from the broken-in door and other rioters climbed through broken windows. *See Image 3.*



*Image 3: Keniley, shortly after entering the Senate Wing Door.*

Undeterred, Keniley walked further into the building, down a connecting hallway and into the Crypt. While inside, he walked past multiple police officers and continued filming with his cellphone. *See Images 4 and 5*.



*Image 4: Keniley walks past police officers in riot gear inside the Capitol.*



*Image 5: Keniley walks past police officers in the Capitol.*

Keniley returned to the Senate Wing Doors and departed the Capitol Building approximately ten minutes after he entered, at 3:19 p.m., through the same doors he entered. *See Image 6.*



*Image 6: Keniley, just before leaving the Capitol.*

*Keniley's Cellphone Video*

Although video evidence makes it apparent that Keniley used his cellphone to capture pictures or videos on January 6, the government was unable to recover any of those recordings. The government seized and searched Keniley's cellphone and five other media drives when Keniley was arrested, but none of those contained photos, videos, or text conversations from January 6. The earliest chronological chats and instant messages saved on the cell phone were from January 8, 2021.

*The Charges and Plea Agreement*

On January 2, 2024, the United States charged Keniley by a four-count Information with violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) (Count One); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three); and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). On March 19, 2024, pursuant to a plea agreement, Keniley pleaded guilty to Counts Three and Four. By plea agreement, Keniley agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Keniley now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the Keniley faces up to six months of imprisonment and a fine of up to $5,000 on each count. Keniley must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are both Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Keniley's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Keniley, the absence of violent or destructive acts is not a mitigating factor. Had Keniley engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Keniley's case is the fact that he entered the Capitol despite seeing clear signs that entry was prohibited. On his way into the building, Keniley walked past rioters who were climbing through windows, and he walked past a blaring alarm. Nonetheless, he decided to trespass into the Capitol building. Keniley also refused to leave the Capitol even after walking past multiple police officers while inside. Instead, he held his camera phone up, nearly in their faces, and continued through the building. Finally, Keniley has shown no remorse for his conduct on January 6.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Keniley's History and Characteristics

As set forth in the PSR, Keniley's criminal history consists of charges of Reckless Driving and Disobeying a Traffic Officer that were dismissed in 1988. PSR ¶ 28. Keniley is employed as an accountant and has been compliant with his conditions of pre-trial release. PSR ¶¶ 6, 51.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration,

as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a term of incarceration. Although Keniley accepted responsibility by pleading

guilty, Keniley has taken no steps to denounce his words and actions on January 6, 2021, including to the Probation officer who conducted his PSR interview. The Court should view any remorse Keniley expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Keniley based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Matthew Mazzocco*, 21-CR-054 (TSC), this Court sentenced the defendant to a period of 45 days of incarceration following his plea of guilty to a single misdemeanor offense.[3] In *Mazzocco*, the defendant entered the Capitol through the same door as in the present case. Although both Mazzocco and Keniley spent about the same length of time inside the Capitol (12 minutes for Mazzocco; 10 for Keniley) Mazzocco traveled into private offices while inside, where Keniley did not. That difference provides a clear offset in the difference between the 45 days Mazzocco received and the 14 days that is appropriate here.

In *United Staes v. Michael Pomeroy*, 22-CR-183 (TSC), this Court sentenced the defendant to 30 days of incarceration.[4] Like Keniley, Pomeroy was near the front of a crowd that was directly next to police officers on the outside of the Capitol. Pomeroy witnessed more violence outside the Capitol than Keniley did before entering, but both observed groups of officers outside, and both took video or photographic images of the riot. Pomeroy, like Keniley, also expressed no remorse before his sentencing. The similarities in their cases make a similar sentence appropriate, while the difference in violence explains the disparity between the 30 days Pomeroy received and the 14 days the government recommends for Keniley.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

---

[3] The defendant in *Mazzocco* pled guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), a class-B misdemeanor.

[4] Similarly, Pomeroy pled guilty to a violation of 40 U.S.C. § 5104(e)(2)(G).

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Keniley must pay $500 in restitution, which reflects in part the role Keniley played in the riot on January 6.[6] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Keniley's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 86.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Keniley's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ *Eric W. Boylan*

---

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

13

Eric W. Boylan
Assistant U.S. Attorney
Texas Bar No. 24105519
Phone: 202-815-8608
Email: Eric.Boylan@usdoj.gov
601 D Street NW
Washington, D.C. 20001